**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE CHEFS' WAREHOUSE, INC. and DEL MONTE CAPITOL MEAT CO., LLC, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN DEBENEDETTI, DAVID DEBENEDETTI, VICTORIA DEBENEDETTI, and THERESA LINCOLN, <br><br> Defendants. | Civil Case No.:  1:18-cv-2811 <br><br><br> **DECLARATORY JUDGMENT COMPLAINT** |

Plaintiffs The Chefs' Warehouse, Inc. ("Chefs' Warehouse") and Del Monte Capitol Meat Co., LLC ("Del Monte LLC," and together with Chefs' Warehouse, "Plaintiffs"), by and through their attorneys Reed Smith LLP, hereby allege against Defendants John DeBenedetti, David DeBenedetti, Victoria DeBenedetti, and Theresa Lincoln as follows (collectively, "Defendants" or "DeBenedettis"):

**PRELIMINARY STATEMENT**

1.      This action involves restrictive covenants entered into in connection with three (3) corporate acquisitions in the highly competitive food distribution industry.  Plaintiff, Chefs' Warehouse, a national food sale and distribution company, in business for over 30 years, secures, maintains and grows its business, by, among other things, acquiring reputable regional businesses. The regional acquisitions at issue involved the purchase of three (3) businesses from four (4) members of the DeBenedetti family, David, Victoria, John and Theresa.  Del Monte LLC, an affiliate of Chefs' Warehouse, was the product of these acquisitions.  The DeBenedettis were paid nearly $200 million for their businesses and granted further earn-out payments, subject to meeting certain performance targets.  In addition, certain family members were also offered positions with Chefs' Warehouse and Del Monte LLC.

2.      These acquisitions were memorialized in several agreements ("Acquisition Agreements"), each of which contained non-competition and non-solicitation provisions that prohibited the DeBenedettis from competing in the food product sale and distribution business, for a period of five (5) years, in "all States of the United States of America and all foreign jurisdictions" where the acquired companies previously had operations or conducted business. Such locations included California, Idaho, Alaska, Arizona, Connecticut, Hawaii, Illinois, Ohio, Michigan, Missouri, Texas and Nevada.

3.      John, Victoria and Theresa were employed by Chefs' Warehouse and/or Del Monte LLC though none remain employed with the company.[1]  Since their departures, all of the DeBenedettis have contested the scope of the covenants and seek to violate their covenants not to compete or solicit by pursuing business opportunities in restricted states.

4.      Plaintiffs bring this action for a declaratory judgment affirming the breadth and scope of the agreed-upon restrictive covenants, post-departure, for which Chefs' Warehouse paid substantial consideration.  Unless the Court declares the geographic bounds in which the DeBenedettis are prohibited from competing, Plaintiffs will suffer great harm in the form of loss of goodwill and business reputation as well as other damages.

## PARTIES

5.      The Chefs' Warehouse, Inc. is a corporation duly formed and existing under the laws of the State of Delaware with a principal place of business at 100 East Ridge Road, Ridgefield, Connecticut 06877.

6.      Del Monte Capitol Meat Co., LLC is a Delaware LLC with a principal place of business at 100 East Ridge Road, Ridgefield, Connecticut 06877.

7.      Upon information and belief, John DeBenedetti is a resident of California.

---

[1] John still serves on the Board of Directors for Chefs' Warehouse.

8.      Upon information and belief, David DeBenedetti is a resident of Idaho.

9.      Upon information and belief, Victoria DeBenedetti is a resident of California.

10.      Upon information and belief, Theresa Lincoln is a resident of California.

## JURISDICTION AND VENUE

11.      This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the amount in controversy in this action exceeds seventy-five thousand dollars, exclusive of interest and costs, and this controversy is between citizens of different states.

12.      Venue is proper in this District because Defendants have agreed that state and federal courts located in New York County shall have exclusive jurisdiction of any dispute in connection with the Acquisition Agreements.

## STATEMENT OF FACTS

**A.  CHEFS' WAREHOUSE IS A LEADER IN THE FOOD DISTRIBUTION INDUSTRY**

13.      Chefs' Warehouse is a premier distributor of specialty foods throughout the United States and Canada.  Chefs' Warehouse's customer base largely consists of menu-driven independent restaurants, fine dining establishments, country clubs, hotels, caterers, culinary schools, bakeries, patisseries, chocolatiers, cruise lines, casinos and specialty food stores.

14.      The food distribution business is highly competitive.  Chefs' Warehouse competes for market share with global food distribution giants, such as Sysco Corporation and US Foods.  Chefs' Warehouse also competes with regional food distributors that form close relationships with the customers they serve.  Success in the industry is dependent on, among other things, developing and maintaining special relationships with customers, and creating and adapting proprietary technologies and business methods to meet customer needs and preferences.

15.     Chefs' Warehouse systematically secures, maintains and grows its business through the acquisition of reputable regional businesses. Chefs' Warehouse also invested, and continues to invest, considerable resources to develop information, methods and techniques to identify potential customers, develop business relationships with customers, identify markets for expansion and acquire well-respected regional businesses to aid in that endeavor. As this information is the lifeblood of Chefs' Warehouse business, in order to protect itself, Chefs' Warehouse often requires sellers of its companies that it acquires, and its employees, to sign non-competition and non-solicitation agreements.

## B.  THE DEBENEDETTI FAMILY BUSINESSES

16.     Del Monte Capitol Meat Co., Inc. ("Del Monte Co.") was a well-known and highly profitable regional hotel, restaurant and institution meat distribution company. The company was founded in 1976 and rapidly expanded, organically and through several acquisitions, so that, in recent years, it possessed a strong position in the areas that it served.

17.     Del Monte Co. was a private family business owned by David and Victoria DeBenedetti and their children John DeBenedetti and Theresa Lincoln.

18.     In 1996, David and Victoria formed another entity called T.J. Foodservice, Inc. ("Foodservice"), which was owned by John, Victoria and Theresa. Foodservice operated out of a Del Monte Co. facility and outwardly appeared to be another arm of Del Monte Co. because it operated under the name "Del Monte Meat Company."

19.     In 2011, the DeBenedetti family expanded into seafood, acquiring a seafood distribution company known as Ports Seafood, though it was registered as TJ Seafood, LLC ("Seafood" and collectively with Del Monte Co. and Foodservice, the "Del Monte Entities").

Like Foodservice, Seafood was owned by John, Victoria and Theresa. As with Del Monte Co., Seafood rapidly expanded.

20.     The Del Monte Entities conducted business in at least California, Idaho, Alaska, Arizona, Connecticut, Hawaii, Illinois, Ohio, Michigan, Missouri, Texas and Nevada.

21.     Given the reputation and profitability of the Del Monte Entities, they became an attractive target for Chefs' Warehouse.  In 2014, Chefs' Warehouse commenced negotiations with the DeBenedettis to acquire the Del Monte Entities.  By January 2015, the parties' executed the documents to complete the transaction, and the transaction closed on April 6, 2015.

**C.  CHEFS' WAREHOUSE ACQUIRES THE DEL MONTE ENTITIES**

22.     The Del Monte Entities were acquired in a two-step transaction.  The first of these was a merger by which Del Monte Co. was assumed by Chefs' Warehouse, resulting in the formation of Del Monte LLC; the second, an asset purchase, by which Foodservice and Seafood were acquired by the newly formed Del Monte LLC.  Ultimately, the DeBenedettis were paid nearly $200 million for their businesses, offered positions with Chefs' Warehouse, and granted further earn-out payments if the Protein Division of Chefs' Warehouse, including Del Monte LLC, reached certain milestones.

**a.  THE CHEFS' WAREHOUSE-DEL MONTE CO. MERGER AGREEMENT**

23.     The terms of the merger between Chefs' Warehouse, Del Monte Merger Sub, LLC, an affiliate of Chefs' Warehouse, and Del Monte Co. were set out in a merger agreement, dated January 11, 2015 (the "Merger Agreement").  The parties to the Merger Agreement included Chefs' Warehouse on the one hand, and David DeBenedetti, Victoria DeBenedetti, and the DeBenedetti/Del Monte Trust on the other hand, collectively defined as the "Shareholders."

John DeBenedetti was also a party to the Merger Agreement as a representative for the Shareholders.

24.     The Merger Agreement contained a non-competition and non-solicitation clause restricting David and Victoria as the Shareholders (the "Covenants") and was part of the consideration for the overall compensation paid to David and Victoria in connection with the sale of Del Monte Co. The Covenants stated that:

> each of the Shareholders covenants and agrees that it will not, and will cause its Affiliates not to, without the prior written consent of [Chefs' Warehouse]…engage, directly or indirectly, including through direct or indirect equity ownership, in any business competing or planning to compete with Combined Companies' Business, including, but not limited to, soliciting or serving any customers of the Combined Companies' Business, for a period of five (5) years following the Closing, in all States of the United States of America and all foreign jurisdiction where the Combined Companies' Business has operations or does business.

25.     The Combined Companies' Business was defined as the combination of two other defined terms:

> a.  Business: the business conducted by Del Monte [Co.] immediately prior to the signing of this Agreement, including, but not limited to, the sale and distribution of food products and other items sold for use in the operations of a Company Customer's business  (emphasis added).

> b.  Company Sellers' Business: the business conducted by the Company Sellers immediately prior to the signing of this Agreement, including, but not limited to, the sale and distribution of food products and other items sold for use in the operations of a Company Seller's customers' business  (emphasis added).

26.     Accordingly, the agreement prohibited any competition by the DeBenedettis in the sale and distribution of food products in any state in which the Del Monte Entities did business prior to the acquisition.  This restriction remains in place for five years post-closing, until April 6, 2020.

27.     The Merger Agreement also contained a clause in which David and Victoria, as the Shareholders, acknowledged that Chefs' Warehouse and Del Monte LLC would be:

irreparably damaged if any of the Shareholders or any of their Affiliates were to provide services to or otherwise participate in the business of any Person competing or planning to compete with [Del Monte LLC] or its Affiliates in a business similar to the Combined Companies' Business and that any such competition by any of the Shareholders or any of their Affiliates would result in a significant loss of goodwill" by Del Monte Co.

28.   Finally, the Merger Agreement sets forth that "[e]ach Shareholder has determined and hereby acknowledges that the Restrictive Covenants are reasonable in terms of duration, scope and area restrictions and are necessary to protect the goodwill of [Del Monte Co.] and the substantial investment in the Assets and the Business made by [Chefs' Warehouse] hereunder." The parties thus tailored the Covenants to the states in which Chefs' Warehouse acquired the Del Monte Entities' good will, thereby protecting the interests of Chefs' Warehouse as the acquiring party and the good will that was transferred with Del Monte LLC.

### b.   THE DEL MONTE LLC PURCHASE OF FOODSERVICE AND SEAFOOD

29.   The second transaction—the purchase of Foodservice and Seafood by the newly formed Del Monte LLC—was memorialized in an asset purchase agreement, dated January 11, 2015 ("Asset Purchase Agreement").  The parties to the Asset Purchase Agreement were Chefs' Warehouse, Foodservice, Seafood, Del Monte LLC, John DeBenedetti, Victoria DeBenedetti and Theresa Lincoln.  John, Victoria and Theresa were collectively defined as the "Shareholders" in the Asset Purchase Agreement.   John DeBenedetti was also a party to the Asset Purchase Agreement in his capacity as Sellers' Representative.

30.   The Asset Purchase Agreement contains non-competition and non-solicitation requirements nearly identical to those in the Merger Agreement, generally prohibiting John, Victoria and Theresa as the Shareholders, from competing in the states where the Del Monte Entities had conducted business for a period of five years.   The Shareholders to the Asset Purchase Agreement similarly acknowledged the harm to Chefs' Warehouse and Del Monte LLC

should John, Victoria or Theresa as Shareholders set out to compete in the "sale and distribution of food products."[2]   John, Victoria and Theresa also acknowledged that the Covenants in the Asset Purchase Agreement were reasonable in duration, scope and area and necessary to protect the investments made by Chefs' Warehouse.

31.     Section 8.3 of the Asset Purchase Agreement requires the award of reasonable attorneys fees, costs, and disbursements to the prevailing party of any action arising out of or relating to the Asset Purchase Agreement, *including any interpretation thereof*.

32.     In the three years since Chefs' Warehouse acquired the Del Monte Entities, it has integrated the distribution of the Del Monte Entities' products into its operations across the United States and Canada.   As a result, the Del Monte Entities now operate wherever Chefs' Warehouse conducts business.

**D.  JOHN DEBENEDETTI'S EMPLOYMENT AGREEMENT**

33.     At the time Chefs' Warehouse acquired the Del Monte Entities, it also retained John De Benedetti to work for Del Monte LLC as President and Chief Executive Officer, as well as Executive Vice President-Protein of Chefs' Warehouse, and offered him a position on Chefs' Warehouse's Board of Directors.   The terms and conditions of John's employment were set forth in an employment agreement, dated April 6, 2015 ("Employment Agreement").

34.     The Employment Agreement sets forth that John "acknowledges and is bound by the Restrictive Covenants included in Section 4.7 of the Asset Purchase Agreement…and that he has carefully read and considered the provisions thereof and, having done so, agrees that the restrictions set forth in Section 4.7 of the Asset Purchase Agreement are fair and reasonable and are reasonably required for the protection of the legitimate business and economic interest of"

---

[2] The definition of "Combined Companies' Business" is slightly different in the Asset Purchase Agreement, but has the same meaning as the definition in the Merger Agreement.

Del Monte LLC.  The Employment Agreement also sets forth that John "further acknowledges that [Del Monte LLC] would not have entered into this Agreement absent the Executive's agreement to be subject to the Restrictive Covenants of Section 4.7 of the Asset Purchase Agreement."

**E.  JOHN DEBENEDETTI'S EMPLOYMENT WITH CHEFS' WAREHOUSE AND DEL MONTE LLC IS TERMINATED**

35.     On or around January 17, 2018, John's employment with Chefs' Warehouse and Del Monte LLC was terminated.

36.     Since John's termination, the DeBenedettis have expressed a highly narrow interpretation of the applicable restrictive covenants.  Among other things, the DeBenedettis have indicated that they believe they are free to pursue competitive business opportunities related to the sale or distribution of food products in all areas outside of specific counties in Northern California. They have also indicated that they may in fact pursue some competitive activities. Were the DeBenedettis to do so, they would be in competition with Chefs' Warehouse and Del Monte LLC in states explicitly prohibited in the Covenants.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment against David DeBenedetti and Victoria DeBenedetti)**

37.     Plaintiffs restate and re-allege the foregoing paragraphs of this Complaint as if fully set forth herein.

38.     In connection with the sale of the Del Monte Entities, David DeBenedetti and Victoria DeBenedetti signed the Merger Agreement.

39.     Pursuant to the Merger Agreement, David and Victoria agreed that they would not compete in the sale and distribution of food products in any state in which a Del Monte Entity operated prior to the merger until April 6, 2020.  David and Victoria agreed that the scope of the

Covenant was reasonable and necessary to protect the goodwill of Del Monte Co., which was transferred to Chefs' Warehouse as Del Monte LLC, and to protect Chefs' Warehouse as the purchaser of Del Monte Co.

40.     The Covenants in the Merger Agreement are tailored to protect Plaintiffs' legitimate businesses interests and to protect Chefs' Warehouse's significant investments.

41.     Upon information and belief, David and Victoria are seeking to pursue competitive business opportunities related to the sale or distribution of food products in violation of the restrictive covenants.

42.     David and Victoria have stated they believe that the Covenants foreclose competition only in Northern California, despite no such limitation being present in the Covenant.

43.     There exists a justiciable controversy between the parties which is not amenable to conventional remedies, and to which Plaintffs have no adequate remedy, or other form of action.

44.     Pursuant to 28 U.S.C. § 2201, this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

45.     By reason of the foregoing, Plaintiffs hereby request this Court render a declaratory judgment setting forth the rights and obligations of the parties, including, that: the Merger Agreement prevents David and Victoria from pursuing competitive business opportunities related to the sale or distribution of food products in the states in which the Del Monte Entities conducted business, including California, Idaho, Alaska, Arizona, Connecticut, Hawaii, Illinois, Ohio, Michigan, Missouri, Texas and Nevada.

**SECOND CAUSE OF ACTION**
**(Declaratory Judgment against John DeBenedetti,**
**Victoria DeBenedetti and Theresa Lincoln)**

46.     Plaintiffs restate and re-allege the foregoing paragraphs of this Complaint as if fully set forth herein.

47.     In connection with the sale of the Del Monte Entities, John DeBenedetti, Victoria DeBenedetti and Theresa Lincoln signed the Asset Purchase Agreement.

48.     Pursuant to the Asset Purchase Agreement, John, Victoria and Theresa agreed that they would not compete in the sale and distribution of food products in any state in which a Del Monte Entity operated prior to the asset purchase until April 6, 2020.  John, Victoria and Theresa agreed that the scope of the Covenant was reasonable and necessary to protect the goodwill of the Del Monte Entities and to protect Plaintiffs as the purchasers.

49.     The Covenants in the Asset Purchase Agreement are tailored to protect Plaintiffs' legitimate businesses interests in protecting its significant investments.

50.     Upon information and belief, John, Victoria and Theresa are seeking to pursue competitive business opportunities related to the sale or distribution of food products in violation of the restrictive covenants.

51.     John, Victoria and Theresa have stated they believe that the Covenants foreclose competition only in Northern California, despite no such limitation being present in the Covenant.

52.     There exists a justiciable controversy between the parties which is not amenable to conventional remedies, and to which Plaintiffs have no adequate remedy, or other form of action.

53.     Pursuant to 28 U.S.C. § 2201, this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

54.     By reason of the foregoing, Plaintiffs hereby request that this Court render a declaratory judgment setting forth the rights and obligations of the parties, including, that the Asset Purchase Agreement prevents John, Victoria and Theresa from pursuing competitive business opportunities related to the sale or distribution of food products in the states in which the Del Monte Entities conducted business, including California, Idaho, Alaska, Arizona, Connecticut, Hawaii, Illinois, Ohio, Michigan, Missouri, Texas and Nevada.

### THIRD CAUSE OF ACTION
**(Declaratory Judgment against John DeBenedetti)**

55.     Plaintiffs restate and re-allege the foregoing paragraphs of this Complaint as if fully set forth herein.

56.     In connection with the sale of the Del Monte Entities and his employment with Chefs' Warehouse, John DeBenedetti signed the Employment Agreement.

57.     The Employment Agreement incorporated the provisions of the Asset Purchase Agreement in which John covenanted that he would not compete in the sale and distribution of food products.   Through incorporation of the Asset Purchase Agreement, the Employment Agreement set forth that John covenanted that he would not compete in the sale and distribution of food products in any state in which a Del Monte Entity operated prior to the acquisition until April 6, 2020.   John agreed that these restrictions were reasonable and necessary to protect the goodwill of Del Monte Co. and to protect Plaintiffs as the purchaser of the Del Monte Entities. John further acknowledged that he recognized he would not have been employed by Del Monte LLC and Chefs' Warehouse had he not agreed to the Covenants.

58.     The Covenants in the Asset Purchase Agreement, incorporated into the Employment Agreement, are tailored to protect Plantiffs' legitimate businesses interests in protecting its significant investments.

59.     Upon information and belief, John is seeking to pursue competitive business opportunities related to the sale or distribution of food products in violation of the restrictive covenants.

60.     John has stated he believes that the Covenants foreclose competition only in Northern California, despite no such limitation being present in the Covenant.

61.     There exists a justiciable controversy between the parties which is not amenable to conventional remedies, and to which Plaintiffs have no adequate remedy, or other form of action.

62.     Pursuant to 28 U.S.C. § 2201, this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

63.     By reason of the foregoing, Plaintiffs hereby request this Court render a declaratory judgment setting forth the rights and obligations of the parties including, that the Employment Agreement prevents John from pursuing competitive business opportunities related to the sale or distribution of food products in the states in which the Del Monte Entities conducted business, including California, Idaho, Alaska, Arizona, Connecticut, Hawaii, Illinois, Ohio, Michigan, Missouri, Texas and Nevada.

**WHEREFORE**, Plaintiffs demand:

A.  The above-stated Declaratory Relief from Defendants.

B.  An award of costs and expenses as provided for in the Asset Purchase Agreement.

C.  Such other relief as is deemed just and proper by the Court.


Dated: March 30, 2018
       New York, New York

                                    **REED SMITH LLP**

                        By:   _s/ Steven Cooper_____
                              Steven Cooper
                              Sarah Levitan
                              599 Lexington Avenue
                              New York, New York 10022
                              Tel. (212) 521-5400
                              Fax. (212) 521-5450

                              *Attorneys for Plaintiffs*
                              *The Chefs' Warehouse, Inc. and*
                              *Del Monte Capitol Meat Co., LLC*